### WAKEFIELD ET AL. V. BALLARD ET AL.

1. **Jurisdiction:** FORECLOSURE: DAMAGES. The party through whose pleadings a claim for damages for breach of a contract has become joined with an action in equity to foreclose a mortgage, the two issues being a part of the same controversy, cannot be heard to complain that the court has not jurisdiction to hear and determine both in a single action.

2. **Contract:** RESCISSION. Evidence considered which was held not to sustain a claim that a contract had been rescinded.

*Appeal from Cass Circuit Court.*

THURSDAY, OCTOBER 24.

ON the 2d day of October, 1876, the plaintiffs filed in the Cass Circuit Court a petition in substance alleging that on or about the 1st of August, 1876, plaintiffs entered into a parol contract with the defendant Ballard for the purchase of a certain lot of fat cattle and hogs for the sum of seventeen thousand dollars, and as part of said purchase money they executed to said Ballard their joint note for two thousand dollars, secured by a chattel mortgage upon a certain lot of hogs belonging to plaintiffs; that by the terms of said parol contract of purchase plaintiffs were to take said cattle and ship them to Chicago in the defendant Ballard's name, who was to go with said cattle, and upon their arrival at the Union stock yards, in said city, the cattle were to be turned over into the hands of, and were to be subject to the orders and directions of, plaintiffs, who were to sell the same, and from the proceeds pay defendant Ballard the purchase price of said cattle and hogs; that it was expressly agreed that defendant Ballard should not let S. J. Applegate, John Irwin, and other stock dealers at Atlantic, Iowa, know that plaintiffs had purchased said stock, and in case Ballard did let said shippers know of plaintiffs' purchase that said contract should be void, and plaintiffs should not be responsible for the purchase price; that plain-

tiffs and defendant Ballard brought said cattle from defendant's farm, in Audubon county, to the town of Atlantic, and shipped the same to Chicago in the name of defendant Ballard; that plaintiffs desired said stock consigned to three different firms of commission merchants in Chicago, for sale, which Ballard refused to do, and placed the entire lot of cattle in the hands of one firm, and refused to place said cattle in the hands of plaintiffs, or to let them have any control of the same; that Ballard put upon the market and sold said stock against the wishes and instructions of plaintiffs, and has refused to account for any part of the proceeds; that the defendant Ballard informed Applegate and Irwin and others of said sale, and took Applegate and Irwin to Chicago with him, as plaintiffs believe, for the purpose of defrauding them, and that they combined and forced the sale of said stock against the will of plaintiffs, and in violation of the contract; that upon plaintiffs' return from Chicago they demanded possession of the hogs, and defendant Ballard refused to deliver them, and claimed he had purchased them, and upon his own motion credited upon plaintiffs' note seven hundred dollars, when, in fact, defendant offered plaintiffs more than said sum, and they refused to sell; that the consideration for said note has wholly failed; that the note was fully paid, and more, in the sale of said stock, and defendant is justly indebted to plaintiffs in the sum of one hundred dollars, for expenses to Chicago in looking after said stock; that the defendant Ballard placed the note and chattel mortgage in the hands of the defendant Presnall, sheriff of Cass county, for foreclosure, and that he is proceeding to foreclose the same by notice and sale; that plaintiffs believe, upon a sale of said cattle and hogs at their fair market value, they would more than have paid off said note and mortgage, and the balance of the purchase money, and would have left a margin to plaintiffs of one thousand dollars; and that, if defendant Ballard has not already received his full pay, and more, it is on account of his fraudulent combination with the shippers for the purpose of

compelling plaintiffs to lose on their contract, and because the sale was forced by defendant against the express directions of plaintiffs, and that defendant is now estopped from claiming the purchase price of said stock. The petition prays that said foreclosure proceeding may be transferred to the Circuit Court; that an injunction issue restraining the taking possession and sale of said property, until the controversy be settled; that the note and mortgage be held to be without consideration, or, if not, that the defendant Ballard be held to account for what he has received; that plaintiffs have damages for the violation of the contract, and such other relief as may be deemed equitable. An injunction was granted as prayed in the petition.

October 26, 1876, the defendants answered, admitting the execution of the note and mortgage, and the credit on the same; that they were placed in defendant Presnall's hands for foreclosure; that the note was given for the purchase of a lot of cattle; denying the alleged failure of consideration, the fraud charged, and all the other allegations of the petition, and praying a dissolution of the injunction, and judgment against the plaintiffs and their sureties on the injunction bond for the amount of the note and all costs incurred. The cause being undetermined at this term, with the adjournment of court, stood continued to the March Term, 1877.

On the 26th day of March, 1877, the defendants filed an amendment to their answer, alleging that the sheriff took possession of the mortgaged property for the purpose of foreclosure, and made costs to the amount of twelve dollars, for which judgment is asked; that the injunction was wrongfully sued out, to the damage of defendant in the sum of twenty-five hundred dollars, for which judgment is prayed against plaintiffs and their sureties on the injunction bond; that the defendant Ballard sold the plaintiff a large number of cattle and a lot of hogs, the same referred to in plaintiffs' petition, for seventeen thousand dollars, as part consideration for which the note in question was executed; that the cattle were to be.

shipped at once to Chicago, and sold at the expense of plaintiffs, and the remaining fifteen thousand dollars of the purchase price were to be paid out of the proceeds of the sale; that the sale of said cattle, less freights, yardage, feed and commission on the sales, realized only the sum of fourteen thousand three hundred and fifty-seven dollars and fifteen cents, which sum was paid over to defendant, leaving a balance due him, in addition to said note, upon said purchase, of six hundred and forty-two dollars and ninety-five cents; that at the request of plaintiffs defendant employed several hands to help in the shipment of said cattle to Chicago, to whom defendant paid seventy dollars. For these sums the defendant asked judgment.

On the 30th of March the plaintiffs filed a motion to transfer to the law side of the calendar the issues respecting the damages on the injunction bond, and as to the balance claimed to be due under a contract of purchase of the stock, and whether said contract was in fact made or subsequently rescinded. The court sustained the motion so far as it respects the damages claimed in the injunction bond, and overruled it in all other respects, to which action the plaintiffs excepted. The plaintiffs replied, denying the allegations of the answer, and denying the right of defendants to maintain any claim for damages in this action.

On the 31st of March, 1877, the plaintiffs filed an amendment to their petition, as follows:

"1. That said parol contract referred to in their petition contained these further conditions in addition to what is stated in said petition; that by the terms of said contract the plaintiffs were to run said cattle, and if, when sold in Chicago, said cattle and hogs should bring more than the sum of seventeen thousand dollars and expenses, then the plaintiff A. M. Wakefield was to take the excess over seventeen thousand dollars for his work in running said cattle and hogs, but in no event was the plaintiff to lose anything, and if said stock did not net more than said seventeen thousand dollars he was

to receive the sum of one hundred dollars for running said stock.

"2.   That said note and mortgage referred to in the original petition were given as a guarantee against the negligence of plaintiff A. M. Wakefield in shipping said cattle and hogs, with the express understanding that it was to be as an indemnity against the loss of stock in shipping, through the neglect of plaintiff A. M. Wakefield.

"3.   That on the —— day of August the plaintiffs demanded the possession of said hogs so sold, upon the conditions hereinbefore set forth, for the purpose of shipping the same as he had agreed to do, and defendant Ballard refused to let plaintiff A. M. Wakefield run said hogs, whereupon the plaintiff notified defendant Ballard that said contract was at an end, and demanded the notes and mortgage set out in the petition, and thereupon the contract was fully rescinded, and defendant refused to deliver up the same."

The court found that there was due the defendant Ballard on the note the sum of one thousand three hundred and fifty-seven dollars and five cents, and that in the matter of the sale by Ballard to plaintiffs of the cattle and hogs referred to there was due him the further sum of five hundred and ninety-seven dollars and eighty-five cents, with interest from August 10, 1876, and rendered judgment in his favor for said sums, and dismissed the plaintiffs' petition. The plaintiffs appeal.

*H. G. Curtis* and *A. L. Churchill*, for appellants.

*Phelps & De Lano* and *John W. Scott*, for appellees.

DAY, J.—I.   The plaintiffs filed a motion to strike out the portion of the answer claiming the balance due under the contract for the sale of the stock, upon the ground that such claim is for damages for breach of contract, and must be prosecuted by an action at law, and cannot be joined with an action in equity to foreclose a mortgage.

1. JURISDIC-
TION: foreclos-
ure: damages.

Wakefield v. Ballard.

This position of appellant renders it necessary to consider the exact attitude in which the case stood in the court below. The defendant was proceeding to foreclose a chattel mortgage by notice and sale. The plaintiffs, by their proceeding in equity, removed this foreclosure proceeding into the Circuit Court, claiming, among other things, that upon a full account of the sale of said cattle and hogs at their full market value they would more than pay off the note and mortgage, and the balance of the purchase money, and leave one thousand dollars due plaintiffs. In answer to this allegation it became necessary for the defendant to account fully for the proceeds of the sale of the stock. This accounting shows that the cattle sold, deducting expenses, for fourteen thousand three hundred and fifty-seven dollars and five cents, being the amount of the note, and six hundred and forty-two dollars and ninety-five cents besides, less than the price which, it is alleged, plaintiffs agreed to pay for the stock. The defendants were called upon by plaintiffs to make this accounting. The question now is, having accounted as requested, and the account showing a balance in defendant's favor, can he have judgment for the balance in this action, or must he be remitted to his action at law therefor? We are of opinion that the plaintiffs, by their petition, drew the whole matter within the jurisdiction of a court of equity, and that that court, to avoid a multiplicity of actions, may retain jurisdiction for the purpose of settling the entire controversy between the parties pertaining to this contract. The court did not err in the action complained of. This view also disposes of the objection to proof of the sums paid Irwin and Harris for services in transporting the cattle.

II. It is claimed by appellee that this cause is not triable here *de novo*. In the view which we have taken of the case it is not necessary to determine this question. It is claimed by appellants that their contract was simply to "run" the cattle and hogs to Chicago, and that they were to have for their services whatever the stock realized over seventeen thousand dollars, and if the stock realized less than seventeen thousand

dollars that they were to have one hundred dollars for their services. This claim is set up in an amendment to the petition. It is entirely at variance with the claim made in the original petition, in which it is alleged that plaintiffs bought the stock for seventeen thousand dollars. It is inconsistent with the giving of the note for two thousand dollars, secured by chattel mortgage, with the conduct and declarations of the plaintiffs at various times, and is not, we think, sustained by the preponderance of the evidence.

III. It is claimed that the defendant Ballard refused to

2. CONTRACT : rescission.

deliver the stock to plaintiffs at Chicago, and that the contract was thereby rescinded. The original petition alleges, and the proof shows, that the stock was to be shipped to Chicago in Ballard's name. The whole case shows that this was done in order that he might hold a lien upon them for the remaining fifteen thousand dollars of the purchase price. The selling of the cattle in Ballard's name was in exact accordance with the terms of the agreement. The claim that they were sold without the consent and against the protest of plaintiffs is not sustained by the proof.

IV. It is claimed that the contract was an entire one for two hundred and eighty cattle and fifty hogs; that the hogs were never delivered, and hence that the contract cannot be enforced, and the defendant's only remedy is by action for the reasonable value of the cattle. The preponderance of the evidence shows that the hogs were sold to Ballard for seven hundred dollars, and the amount credited on the note. This sale supplies the place of a delivery, and performs all the conditions of the contract. Some objections are made to the rulings of the court in the admission of evidence, which we deem it unnecessary to notice. We have considered the case as triable *de novo,* and so regarding it, and rejecting all evidence not clearly competent, we are satisfied that the decree of the court is abundantly sustained.

AFFIRMED.